**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

DONNA WILLIAMS,
Guardian and Conservator for
THOMAS DALE WILLIAMS,

                              Plaintiffs,

v.                                                      CIVIL ACTION NO.  2:04-cv-01125

LIBERTY MUTUAL FIRE INSURANCE
COMPANY, et al.,

                              Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a Motion for Summary Judgment [Docket 14] filed by the

defendant, Liberty Mutual Fire Insurance Company (Liberty Mutual).  For reasons explained below,

the court **DENIES** the motion.

*I. Background*

On October 23, 1997, the plaintiff, Thomas Dale Williams, was riding in the passenger seat

of a 1992 Ford Mustang driven by Adam Arnold.  *West Virginia State Police Accident Report* 1–2

(Oct. 23, 1997).  The car was traveling at a high rate of speed on Route 16 in Clay County, West

Virginia.  *Id*. at 3.  Arnold lost control of the car as he tried to make a right turn near Clay County

High School.  *Id*.  The car crossed to the other side of the road, hit a guardrail, descended an

embankment, collided with a tree, and eventually stopped in the high school parking lot.  *Id*.  The

plaintiff sustained serious injuries including permanent damage to his brain.  (Compl. For Damages

For Injuries From Car Accident ¶ 4–5.)

The plaintiff, who is represented in this litigation by his guardian and conservator, Donna

Williams, alleged that Arnold's recklessness caused the crash.  (*Id*. ¶ 4.)  Arnold did not own the

Mustang that crashed; the car was owned by the plaintiff's parents, Donna and Thomas B. Williams.

(*Id*. ¶ 2.)  The Mustang was covered under an insurance policy issued by Nationwide Insurance

Company (Nationwide).  *West Virginia State Police Accident Report* 1.  In addition to the coverage

afforded by Nationwide, the plaintiff sought coverage from two policies issued by the defendant,

Liberty Mutual.  (Def. Mem. Supp. Mot. for Summ. J. 2.)  One of these policies was issued to Adam

Arnold's father and stepmother, Ronnie and Lisa Arnold, and the other policy was issued to Daniel

A. Perry, who resided with Adam's mother.  (Compl. for Decl. Relief ¶ 64–65.)

Liberty Mutual then filed a declaratory judgment action against the named insureds that

appeared on the two policies:  Ronnie Arnold, Lisa Arnold, and Daniel A. Perry.  (*Id*. ¶ 2–4.)

Liberty Mutual sought a determination that there was no coverage for the defense of or

indemnification  for the plaintiff's underlying action under either policy.  (*Id*. ¶ 93-94.)  This

declaratory judgment action was resolved on October 1, 2003, after each of the insureds released

Liberty Mutual from all claims arising from the October 23, 1997 accident. *Liberty Mutual Fire Ins.

Co. v. Arnold*, No. 2:03-cv-0502 (S.D.W. Va. Oct. 1, 2003) (Agreed Order of Dismissal).

The plaintiff then filed an Amended Complaint on September 21, 2004, in the Circuit Court

of Kanawha County, West Virginia, alleging that Adam Arnold was an insured under both the

Arnold and Perry policies issued by Liberty Mutual.  (Pl.'s First Am. Compl. ¶ XI.) On October 19,

2004, Liberty Mutual filed a Notice of Removal [Docket 1] that removed the state action to this

court on diversity grounds.  Following an agreement that Adam Arnold was not covered by the Perry policy, the claims regarding that policy were dismissed on April 27, 2005 [Docket 13].  The only remaining component in the case is whether Adam is covered by the Liberty Mutual policy issued to his father and stepmother.

## II. The Insurance Policy

The insurance policy issued to Ronnie G. and Lisa J. Arnold (Policy # A02-281-371521-007) is Liberty Mutual's standard LibertyGuard Auto Policy.  The policy provides liability coverage as follows:

> We will pay damages for "bodily injuries" or "property damage" for which any "*insured*" becomes legally responsible because of an auto accident.  Damages include prejudgment interest awarded against the "insured."  We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.  In addition to our limit of liability, we will pay all defense costs we incur.  Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.  We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

*LibertyGuard Auto Policy*, Insuring Agreement, at 2 (emphasis added).  The policy defines an insured as being one of the following:

> 1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."
>
> 2. Any person using "your covered auto."
>
> 3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.
>
> 4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part.  This

provision applies only if the person or organization does not own or hire the auto or "trailer."

*Id*. There are no facts in the record suggesting that Adam Arnold qualifies under subparts 2, 3, or 4. The Mustang was not a "covered auto" under the Liberty Mutual policy[1] nor was Adam legally responsible for the acts of a named insured. Therefore, he must fall under the first subpart if any: "You or any 'family member' for the ownership, maintenance or use of any auto or 'trailer.'" *LibertyGuard Auto Policy*, Insuring Agreement, at 2.

The policy defines "you" as either the named insured or the spouse of a named insured if the spouse is a resident of the same household. *Id*., Definitions, at 1. Because Adam Arnold is not a named insured nor a spouse of a named insured, he does not fall within the definition of "you." Thus, he must fit within the definition of "any 'family member'" in order to be covered by the policy. The policy defines "family member" as "a person related to you by blood, marriage or adoption who is a *resident of your household*." *Id*. (emphasis added). Based on this definition, this case turns on whether Adam Arnold can be considered a resident of his father's household. If he can, the Liberty Mutual policy covers him; if he cannot, the policy is inapplicable.

### III. Standard of Review

To obtain summary judgment, the moving party must show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

---

[1]    The only "covered autos" in the policy were a 1996 Chevrolet pickup truck and a 1995 Chevrolet MTE. *LibertyGuard Auto Policy Declarations* 2.

(1986).  Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor."  *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position.  *Anderson*, 477 U.S. at 252.

### IV. The Effect of an Unresponsive Nonmoving Party

The plaintiff has not filed a response to Liberty Mutual's Motion for Summary Judgment. Although the Federal Rules of Civil Procedure provide for default procedures in Rule 55, those procedures do not govern the failure of a plaintiff to respond to a motion for summary judgment. *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 415 (4th Cir. 1993).  "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Id*. at 416.  Therefore, even though the motion is unopposed, the court will review the pending motion under its usual summary judgment standard to determine whether Liberty Mutual is entitled to judgment as a matter of law.

*V. Analysis*

Because this is an action in diversity, the court must apply the substantive law of West Virginia. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). To determine whether Adam Arnold is an insured under the Liberty Mutual policy issued to his father and stepmother, the court must determine whether he was a resident of his father's household. The Supreme Court of Appeals of West Virginia has explained that because a determination of residency is a question of fact largely controlled by intent, courts should "typically" avoid deciding this issue at the summary judgment stage. *Farmers Mut. Ins. Co. v. Tucker*, 576 S.E.2d 261, 269 (W. Va. 2002). Nonetheless, that court has made the residency determination in cases where the parties' intent was "amply clear" from the record. *Glen Falls Ins. Co. v. Smith*, 2005 W. Va. LEXIS 83, No. 31972, at *17 (W. Va. 2005). Unlike a domicile, a person can have more than one residence. *Aetna Cas. & Sur. Co. v. Shambaugh*, 747 F. Supp. 1203, 1205 (N.D. W. Va. 1990); *Lotz v. Atamaniuk*, 304 S.E.2d 20, 23 (W. Va. 1983). The Supreme Court of Appeals of West Virginia has interpreted the phrase "resident of your household" in insurance contracts to mean a "person who dwells—though not necessarily under a common roof—with other individuals who are named insureds in a manner and for a sufficient length of time so that they could be considered to be a family living together." *Farmers Mut.*, 576 S.E.2d at 270. Factors that can affect a residency determination include, but are not limited to, the intent of the parties, the formality of the parties' relationship, the extent of permanence by the person in the household, the absence or existence of other places of lodging, and the person's age and self-sufficiency. *Id.*

The facts in the record establish that Adam lived at a number of residences. Adam graduated from high school two years prior to the accident and was twenty years old when it took place. *West*

*Virginia State Police Accident Report* 1.  Until he graduated high school, Adam lived with his father, but following graduation, he began living "a lot of places."  (Ronnie Arnold Dep. 6:20, Nov. 28, 2001.)  When asked where he was living in the time period preceding the accident, Adam answered, "All over the place.  I didn't have no permanent residence at that time."  (Adam Arnold Dep. 5:11–12, Nov. 28, 2001.)  Of the places he lived during that time, Adam listed houses belonging to Chris Samples, Tim Carte, and Tom Williams. (Adam Arnold Dep. 5:14–24, 6:2–3.)  When asked whether he resided with his father during the year in question, Adam replied, "Yeah, I think I stayed a week one time.  I don't recall when it was, but I remember staying."  (Adam Arnold Dep. 6:18–19.)  He also admitted that he "probably" spent more time at Samples' place than any other. (Adam Arnold Dep. 7:5–6.)  The fact that he "probably" spent more time at one place does not require a finding that he had only one residence.

The court has considered the fact that Adam's father rarely knew where Adam was staying. In response to a question asking the father where Adam lived during the time of the accident, Ronnie Arnold said, "He lived a lot of places.  I mean, I didn't know where he was at from one week to another.  I mean he's had so many friends that he got acquainted with in high school, and he stayed with just—sometimes, he'd tell me he'd be here, but, you know, I didn't really know, really, most of the time."  (Ronnie Arnold Dep. 6:20–24, 7:1.)  His father stated that Adam would "come back and visit every now and then."  (Ronnie Arnold Dep. 7:4–5.)  Adam admits that he would rotate from place to place during this time period.  (Adam Arnold Dep. 6:22–24.)

Although the plaintiff has not responded to the defendant's motion for summary judgment, an examination of the record reveals that the question of whether Adam was a resident of his father's

household is a close call.  Because the evidence must be construed in a light most favorable to the

nonmoving party at this stage, the court **FINDS** that a question of fact still remains as to this issue.


*VI. Conclusion*

Liberty Mutual has not satisfied its burden for summary judgment by demonstrating an

absence of genuine issues as to material facts and that judgment should be entered in its favor as a

matter of law.  Accordingly, the court **DENIES** the defendant's Motion for Summary Judgment and

orders that the case be dismissed.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented party.

ENTER:        October 18, 2005


JOSEPH  R.  GOODWIN
UNITED STATES DISTRICT JUDGE